### WILSON & BROTHER vs. WHITE.

1. If an independent contractor is employed to do a lawful act, and in the course of his work he or his servants commit some casual act of wrong or negligence, the employer is not responsible; but unless the employer (who was himself a contractor) had relinquished his control over the work to the sub-contractor, and had nothing further to do with it, either in furnishing material or otherwise, except to see that it was done to the satisfaction of the person for whom it was done, then the sub-contractor was not an independent contractor, but was the agent and servant of the original contractor, his act was the act of such original contractor, and the responsibility was upon the latter to answer for any damage done to another in consequence of his failure to perform his duty.

(a.) Where the ordinance of a municipal corporation required the owner of any materials which formed an obstruction in its streets or sidewalks to prepare and place lights thereon before dark with such care and diligence as reasonably to secure their burning until daylight, such owner is liable for any injury that arises to others in consequence of the negligent performance of this duty, whether it was performed by himself or by a contractor employed by him.

(b.) Under such an ordinance, there was no error in refusing to charge that "if the lights were, in point of fact, displayed, the lamps properly filled and lighted, and were from some unknown cause extinguished, or from no negligence of defendant, that was all the law required: that it did not require the defendants to stand guard over the lights all night."

2. A general objection to evidence, without stating any ground therefor, is bad.

(a.) In a suit for damages by one who claimed to have been injured by reason of the negligent and unlawful leaving of obstructions upon the sidewalk of a city by the defendants, without proper safeguards to protect the passing public, it was competent for the plaintiff to testify that after the injury she had no means of living, and was compelled to sell her house and lot to raise money for that purpose, in consequence of the injury received. Such testimony was not irrelevant in the ascertainment of general damages resulting directly from the wrong of which she was the victim.

3. Where counsel for defendants requested the judge to put his charge in writing, and the judge mentioned this fact to the jury, to explain his departure from his usual custom of charging them orally, if this be error, it will not require a reversal, unless it can be affirmatively shown that the party complaining was thereby prejudiced.

4. The verdict is contrary neither to law nor to the evidence.

February 9, 1884.

Actions. Damages. Negligence. Contractors. Principal and Agent. Streets and Sidewalks. Atlanta. Before Judge CLARK. City Court of Atlanta. December Term, 1882.

To the report contained in the decision it is only necessary to add the following: Mrs. Mary L. White brought her action for damages against W. S. Wilson & Brother, to recover on account of a permanent physical injury alleged to have been received by her by falling over a pile of brick left by defendants at night on a sidewalk, in the city of Atlanta, which they were engaged in repairing. She also alleged that it was their duty, under the municipal ordinances, to have kept a burning signal light upon such obstruction to notify passers, and that a failure to do so caused the injury. Expenses of doctors' bills, etc., were alleged.

On the trial, the jury found for the plaintiff $700.00, "permanent damages," and $50.00 "physician's bill." Defendants moved for a new trial, on the following among other grounds:

(1.) Because the court admitted in evidence for plaintiff the following testimony of plaintiff over the objection of defendants: "I had nothing to go on, and had to sell my house and lot to get money to go on, on account of this injury."

(2.) Because the court, after counsel for defendants had requested that he charge the jury in writing, and had so requested before the argument of the cause had begun, erred in charging the jury orally as follows: "Gentlemen

of the jury, in this case I depart from my usual habit of charging the jury orally, because counsel for defendants has requested me to charge the jury in writing."

(3.) Because the court erred in charging the jury as follows: "If you should believe from the evidence that the accident was caused by the neglect of the person who had the contract to lay the pavement on the property of Capt. H. Jackson, or of his servants, in not putting up signal lights at night on the obstruction put upon the sidewalk, as the city ordinance requires, if you believe such obstructions were so placed, and that, because of this, plaintiff was injured, and at the time of the injury it was not in her power to have avoided the injury by reasonable care— always provided you should believe the failure to put out such signal lights was an act of negligence—then, if you should thus believe, the negligence necessary to plaintiff's recovery will have been established."

(4.) Because the court erred in charging the jury as follows: "You will observe, gentlemen, I have said the negligence must be by the person, or his servants, who had the contract to lay the pavement. Upon this point, gentlemen, if you believe from the evidence that defendant took the contract with Capt. H. Jackson to lay the sidewalk in question, and sublet that contract to one Backus, on-the condition that the defendant was to furnish the brick and Backus to furnish the sand and lay the brick, and that upon the principles of law I have given you in charge, Backus would be liable,—the defendant would be liable, provided you believe from the evidence that the work he, the defendant, contracted to do necessarily constituted an obstruction or defect in the street which rendered it dangerous to travel if the lights, as required by the ordinance of the city of Atlanta, were not there on the night and at the time of night of defendant's (plaintiff's?) alleged injury, and that that was an act of negligence."

(5.) Because the court erred in refusing to give the following written requests to charge the jury, made by

defendants in terms of the law: 1st. If the lights were in point of fact displayed, lamps properly filled and lighted, and were extinguished from some unknown cause, or from no negligence of defendants, that is all the law required. The law would not require defendants to stand guard over the lights all night. 2d. If Wilson & Brother sublet the work to Backus by a contract for so much per yard, then Backus would be a contractor, and Wilson & Brother would not be liable if the injury was caused by the negligence of Backus or the servants of Backus.

(6.) Because the verdict was contrary to law and evidence.

The motion was overruled, and defendants excepted.

FRANK A. ARNOLD, for plaintiffs in error.

MILLEDGE & HAYGOOD, for defendant.

HALL, Justice.

The owner of a lot in the city of Atlanta contracted with the defendants to furnish material and lay a pavement on the street adjoining said lot. The defendants hauled the brick for laying the pavement, and piled them up in the gutter beside the place where the work was to be done. They engaged the services of one Backus to provide the sand and lay the brick, agreeing to pay him a stipulated price per yard for the work. Having no lamps of their own, they also requested Backus to provide signal lights and place them upon the brick, while the improvement was going on and while the street was obstructed. The plaintiff, in going along the sidewalk at night, and for the want of a light, as she alleged and proved on the trial, came in contact with the brick deposited at that point, and was seriously injured. She brought her suit against these contractors to recover damages for the injuries she sustained. Among other defences set up by them, was the fact that Backus was the contractor in charge of the work at the

time of the action, and he, if any one, was liable for the wrong, and that they were not.

To this defence two replies were made. First: That Backus was not a contractor, but merely the servant of the defendants, who were in fact the contractors and the responsible parties for the injury. Second: That whether Backus was a contractor or not was immaterial, inasmuch as the defendants were the owners of the material which caused the injury, and were required by the ordinances of the city to put lights thereon at dark, and " so to place and prepare them with such diligence and care as to pro- vide and reasonably insure the burning thereof until day- light," and that they could not escape responsibility to any one injured by carelessness in this respect by agreeing with another to discharge this duty to the public which had in express terms been enjoined upon them by law.

1. "Unquestionably," says Williams, J., who delivered the judgment of the court, in Pickard *vs.* Smith, 10 C. B. (N. S.), 470, (100 E. C. L. R.), " no one can be made liable for an act or breach of duty, unless it be traceable to him- self or his servant or servants in the cause of his or their employment. Consequently, if an independent contractor is employed to do a lawful act, and in the course of the work he or his servants commit some casual act of wrong or negligence, the employer is not responsible. To this effect are many authorities, which are referred to in the argument. The rule is, however, inapplicable to cases in which the act which occasions the injury is one which the contractor was employed to do; nor, by a parity of reasoning, to cases in which the contractor is entrusted with a duty incumbent upon his employer, and neglects its ful- fillment, whereby an injury is occasioned."

Now, was Backus an independent contractor? Was the negligence complained of merely casual on his part? or was he entrusted with the performance of a duty in- cumbent upon the defendants, which he neglected to fulfill, and in consequence of his neglect was injury occasioned

to the plaintiff? If his trust was of the latter character, the defendants are liable for his failure to perform it, but if he was an independent contractor, and the act or negli gence complained of was merely casual, then they are not responsible for the injury resulting therefrom. But unless the defendants had relinquished their control over this work to Backus, and had nothing further to do with it, either in furnishing material or otherwise, except to see that it was done to the satisfaction of their employer, then Backus was not an independent contractor, but was their agent and servant, and his act or negligence was theirs, and the responsibility was upon them to answer for any damage done to another in consequence of his failure to perform his duty. See the opinion of the circuit judge, which was fully adopted by the Supreme Court of Penn- sylvania, in Homan vs. Stanley and the cases therein cited and commented on, 66 Penn. St. R., 464, (5 Am. R., 389, 391, 394); 2 Thompson on Neg., 902–907 inclusive and citations. •

If, however, Backus was an independent contractor, he was not the owner of the material that occasioned this injury, and was not charged by the law of the municipality with its care, nor was he bound to provide signal lights to notify passengers on the street of the danger they were approaching, and to warn them from it. There is no ques- tion that defendants owned this brick, and just as little question that it was their duty, by the city ordinances, to keep lights on it, as a safeguard to persons passing along against injury from the obstructions it caused.

In Gray vs. Pullen, 5 Best & Smith, 970, (117 Eng. C. L. R.), the court of Exchequer Chamber, reversing the de- cision of the court of Queen's Bench, held that where a statutory obligation is imposed on a person, he is liable for any injury that arises to others in consequence of its having been negligently performed, and this whether it was performed by himself or by a contractor employed by him. In delivering the unanimous judgment of the

court, Earle, C. J., cites and relies on the case of Pickard *vs.* Smith, *ut sup.*, and also upon Hale *vs.* The Sittingbourne Railway Company, 6 H. & N., 488.

In the first of these cases, it was said by the judge who delivered the opinion, " the defendant employed the coal merchant to open the trap in order to put in the coal ; and he trusted him to guard it while open and to close it when the coals were all put in. The act of opening it was the act of the employer, though done through the agency of the coal merchant ; and the defendant having thereby caused danger, was bound to take reasonable means to prevent mischief. The performance of this duty he omitted ; and the fact of his having entrusted it to a person who also neglected it, furnishes no excuse, either in good sense or law." Lord Cockburn, C. J., of the Queen's Bench, in Bower *vs.* Peate, L. R., 1 Q. B. Div., 341, after quoting largely from this case, adds : " In Gray *vs.* Pullen, the court of Exchequer Chamber carried this principle still further. An act of parliament having authorized the cutting of a trench across a highway, for the purpose of making a drain, but having attached to the exercise of the right the condition of filling up the trench after the drain had been completed, the defendant had employed a contractor to do the whole work. Owing to the negligence of the latter in filling up the trench, the plaintiff's wife had sustained personal injury. It was contended that the contractor alone was liable, and it was so held in this court, but the court of Exchequer Chamber held otherwise, and reversed our judgment. It is true that in that case the obligation to make good the road was one imposed by statute ; but it can make no difference in point of principle whether the obligation was imposed by statute or existed at law ; and the case is therefore an authority for saying that where a work is being executed from which danger may arise to others, and it thereby becomes incumbent on the party doing or ordering it to be done to take measures to prevent damage resulting to others, he cannot divest himself of

liability by transferring the duty to a contractor." In Tarry vs. Ashton, the same high court (Q. B.), *Ib.*, 314, applied this principle to the occupier of premises from which a large lamp was suspended over a highway, which lamp, before the occupation by the tenant, had become worn out. The defendant had notice of this, and it was held that, if he continued to maintain the lamp, he was under an obligation to take care that it was not a nuisance to the highway, and if it fell down and injured a person passing, he would be liable, though he had employed a contractor to attend to its condition and keep it in order. To the like effect is 2 Thompson on Neg. and citations, and Homan vs. Stanley *ut sup.*

The portions of the judge's charge to which exception was taken, in the present case, conform to these decisions, and in our opinion laid down the law correctly. Consequently there was no error in refusing to charge, as requested in writing by defendants' counsel, that if the defendants sub-let the work to Backus by contract for so much per yard, then Backus would be a contractor, and they would not be liable, if the injury was caused by the negligence of Backus or his servants.

Neither do we think that there was error in refusing to charge that, " if the lights were in point of fact displayed, the lamps properly filled and lighted, and were, from some unknown cause extinguished, or from no negligence of defendants, that was all the law required; that it did not require the defendants to stand guard over the lights all night." This charge would certainly not have been in accordance with the city ordinance which was before the court, and which, as we are advised, formed the basis of the request; it required the owner of the materials which made the obstruction, to prepare and place the lights thereon before dark, " with such care and diligence as reasonably to secure their burning until daylight." But apart from this ordinance, we have seen that it was the duty of the defendants, under the law, to take precautions

against injury to persons passing along the street, from the obstacles so placed in it, and that responsibility for a failure to comply with such requirement could not be avoided by trusting the discharge of this duty to another who neglected its fulfillment, whether he was contractor or agent or servant.

2. The plaintiff testified that, after she received the injury which this suit is brought to redress, she had nothing to go on, and had to sell her house and lot to get money to live on, in consequence thereof. The defendant objected to this testimony, but the record does not show the ground of objection; the evidence was admitted over the objection. The court is not bound to notice objections of this character. They are too general to admit of the formation of any issue of law. No reason occurs to us why the testimony was not competent; it at least showed the serious extremity to which the plaintiff was reduced; it did not show the amount of her loss by reason of the sale, and formed no element in the computation of any special damage which entered into the finding by the jury in her favor. It was one of the immediate consequences of the injury, and was not an irrelevant fact in the ascertainment of general damage resulting directly from the wrong of which she was the victim.

3. The judge was required by the counsel for defendants to put his charge in writing, and mentioned this fact to the jury to explain his departure from his usual custom of charging them orally, and this explanation is made a ground of exception. In *Head vs. Bridges and others*, 67 *Ga.*, 235, this court expressed an opinion, that the better practice in such cases would be, not to state to the jury at whose instance the request was made, but a reversal was refused on that ground. We think that such a statement, if it be error at all, is not reversible error, unless it can be affirmatively shown that the party complaining was thereby prejudiced, and that, in most instances, all allu-

sions to it, either in the motion for a new trial or the bill of exceptions, had better be omitted.

4. The verdict is neither contrary to law nor is it unsupported by the evidence; it seems, on the contrary, to be sustained by the weight of the evidence.

We have been much aided in our investigations by the well arranged briefs of counsel, especially by that of the counsel for defendant in error, which admirably classifies and distinguishes the cases really bearing upon the questions in issue, from those which have only a seeming application to the points contested. Some of these distinctions were nice, and though real, might have escaped our observation had they not been pointed out by the skilled labor of counsel learned in the law.

Judgment affirmed.